UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK C. SOUPAL,

Plaintiff,

v.

Case No. 1:20-cv-863
Hon. Ray Kent

COMMISSIONER OF SOCIAL SECURITY,

Defendant,
_______________________________/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

In 2014, plaintiff suffered a head injury when he fell off of a roof. PageID.386. About four years later, on August 2, 2018, plaintiff filed an application for DIB, alleging a disability onset date of September 29, 2017. PageID.56. Plaintiff identified his disabling conditions as: generalized anxiety; depression; orbital frontal traumatic brain injury; post traumatic stress disorder (PTSD); restless legs; and, sleep apnea. PageID.266. Prior to applying for DIB, plaintiff completed a master's degree in taxation and had past relevant work as a tax analyst. PageID.70, 84. An administrative Law Judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on September 12, 2019. PageID.56-71. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II. ALJ's DECISION**

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of September 29, 2017, and meets the insured status requirements of the Social Security Act through December 31, 2023. PageID.58.

At the second step, the ALJ found that plaintiff had the following severe impairments: chronic migraines; traumatic brain injury; degenerative disc disease cervical spine with right upper extremity radiculopathy status post discectomy; ADHD; neurocognitive disorder; depression; anxiety; and personality disorder. PageID.58. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.59.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can have occasional exposure to noise and pulmonary irritants. He is limited to receiving, comprehending, and executing simple, routine tasks. The claimant can have no contact with the public, occasional contact with coworkers and supervisors, and occasional changes in the work setting where the work is to be performed.

PageID.61. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.69.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.70-71. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as cleaner (181,000 jobs), office worker (90,000 jobs), and price marker (283,000 jobs). PageID.71. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act,

from September 29, 2017 (the alleged onset date) through September 12, 2019 (the date of the decision). PageID.71.

## III. DISCUSSION

Plaintiff has raised six errors on appeal.

### A. The ALJ committed reversible error by failing to find that plaintiff met Medical Listing 12.02.

At step three, the ALJ found that plaintiff did not meet the following listed impairments: 1.04 (disorders of the spine) (based upon plaintiff's degenerative disc disease of his cervical and lumbar spine); 1.05 (amputation) (based on a partial finger amputation); 11.18 (traumatic brain injury) (based on his head injury); 12.02 (neurocognitive disorders) (based on cognitive decline); 12.04 (depressive, bipolar and related disorders); 12.06 (anxiety and obsessive-compulsive disorders); and, 12.11 (neurodevelopmental disorders). PageID.59-61.

Plaintiff contends that the ALJ erred by failing to find that he met the requirements for neurocognitive disorders in Listing 12.02. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987) (a claimant does not satisfy a particular listing unless all of the requirements of the listing are present).

"When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004).

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

The specific requirements for Listing 12.02 are as follows[1]:

> **12.02 Neurocognitive disorders (see 12.00B1), satisfied by A and B, or A and C:**
>
> A. Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas: 1. Complex attention; 2. Executive function; 3. Learning and memory; 4. Language; 5. Perceptual-motor; or 5. Social cognition.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F): 1. Understand, remember, or apply information (see 12.00E1). 2. Interact with others (see 12.00E2). 3. Concentrate, persist, or maintain pace (see 12.00E3). 4. Adapt or manage oneself (see 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

[1] Neither plaintiff nor defendant provided the Court with all of the requirements of Listing 12.02.

The ALJ provided a detailed explanation of why plaintiff did not meet the requirements of Listing 12.02:

> In a sworn statement in August 2019, James De Boe, Ph.D., answered questions related to listing 12.02 (Exhibit 31F). When asked by the claimant's representative if any of paragraph A was met, Dr. De Boe, who administered testing in May/June 2018 and saw the claimant on two occasions in May/June 2019, answered the claimant had decline in three areas including complex attention, executive functioning, and language. Dr. De Boe added the claimant had extreme limitation in understanding, remembering, and applying information, interacting with others, and concentration, persistence, or maintaining pace (Exhibit 31F). As discussed below, I do not find the claimant has more than moderate limitations in the B criteria. While is [sic] abilities certainly have changed since before his accident, his current limitations do not meet marked or extreme limitations. He is able to engage in daily activities around the house including complex household projects, helped his daughter plan a wedding, engage in physical exercise, care for himself, drive a car, and manage finances. Furthermore, Dr. De Boe's testing in 2018 and his more recent progress notes do not support the claimant has extreme limitations. Rather, in 2018 Dr. De Boe indicated that while the claimant's ability to work has changed, he could work at a significantly lessened capacity in his field or in a different occupation. I do not find Dr. De Boe's own testing, progress notes [sic] support extreme limitations. In addition, the record as a whole, specifically the ongoing psychotherapy does not support extreme limitations. The claimant is engaged and has made some progress, is able to use coping skills in his relationship with his wife, which has been strained since his accident and as he has had to adjust to his life without his high functioning job. Accordingly, I do not find the listing for 12.02 or any mental impairment is met.

PageID.60.

The ALJ addressed the paragraph B requirements as follows:

> The record documents the claimant has moderate limits with understanding, remembering, or applying information as demonstrated by mental status examinations and his ability to function independently with activities of daily living including taking his medications with gentle reminders, attending medical appointments and psychotherapy, managing his finances, planning his daughter's wedding, and engaging in bible study (Exhibit 5E; 10F; Testimony). Furthermore, he engages in house projects that take planning, shopping, and execution, supporting no more than moderate difficulties in this area of functioning. Regarding the claimant's ability to interact with others, the record documents his reports of social anxiety, and difficulty getting along with others, generally his wife, due to irritability and anger issues (6F: 10F; 26F; 27F; Testimony). However, he is able to attend church, grocery shop, and interact appropriately with medical professionals

> (6F; 10F; 26F; 27F; 31F). The record does not show more than moderate difficulties in this area of functioning.
>
> The claimant also demonstrates moderate limitations with concentrating, persisting and maintaining pace. While the claimant's ability to process and persist, is reduced as compared prior to his accident, he has progressed in several areas. He is active on a daily basis with projects around the house and in the yard. He was able to help his daughter plan a wedding, showing his ability to concentrate and persist. While his stamina was noted as impaired in 2018, he continues with the ability to participate in several activities, physical therapy, bible study, and several household projects. With regard to adapting or managing oneself, the claimant is able to attend to his personal care, prepare meals, attend his medical and mental health appointments, shop for groceries and necessities, and mange [sic] his finances (Exhibit 5E; 6F; 10F; 26F; 27F; Testimony). The record supports finding moderate limitations with adapting or managing oneself.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

PageID.60-61.

The ALJ also found that plaintiff did not meet the paragraph C requirements, stating:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant's mental impairments have not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms <u>AND</u> resulted in marginal adjustment, meaning he had minimal capacity to adapt to changes in his environment or to demands not already a part of his daily life.

*Id*. (emphasis in original).

The ALJ set out specific reasons for discounting Dr. De Boe's opinions and explaining why plaintiff did not meet each of the requirements of Listing 12.02. Plaintiff did not meet his burden of demonstrating that the ALJ erred in finding that he failed to meet Listing 12.02. Plaintiff neither identified the relevant requirements of Listing 12.02 nor demonstrated specific evidence that he met each of those requirements. Accordingly, plaintiff's claim of error is denied.

**B. In reviewing the previous error, this Court should consider the post hearing evidence.**

Plaintiff appears to request a sentence-six remand to address testing which Dr. DeBoe performed after the adverse decision. When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . " 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

"The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

The ALJ held an administrative hearing on August 22, 2019 (PageID.78) and entered his decision denying benefits on September 12, 2019. On February 4, 11, and 13, 2020, about five months after this adverse decision, plaintiff presented to Dr. De Boe to update neuropsychological evaluations performed in May and June 2018. PageID.42, 2053. Plaintiff has not demonstrated good cause for failing to acquire this updated evaluation before the ALJ entered the decision. In this regard, "the good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision." *Bout v. Commissioner of Social Security*, No. 1:09-cv-45, 2010 WL 565252 at *8 (W.D. Mich. Feb. 11, 2010) (citing *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.1997) (the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process)). Nor has plaintiff established materiality. While plaintiff contends that the evaluation is evidence of cognitive decline, he does not address a timeline for this decline or explain how the evidence from February 2020 is relevant to his condition as it existed on September 12, 2019. Accordingly, plaintiff's request for a sentence-six remand is denied.

**C. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating neuropsychologist.**

For claims filed after March 17, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Now, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability;

(2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

Plaintiff inexplicably suggests that the "treating physician rule" applies and, even if it does not apply, that the ALJ did not properly analyze Dr. De Boe's opinions, *i.e.*, the ALJ "did not 'give good reasons' for not giving weight to a treating physician in the context of a disability determination in accordance with 20 C.F.R. Section 404.1527(d)(2)(2004)." Plaintiff's Brief (ECF No. 20, PageID.2106). Plaintiff also makes a general statement that "the ALJ's analysis of Dr. DeBoe's [sic] testimony and records come nowhere near those standards" required by 20 C.F.R. § 1520c. *Id*. at PageID.2106-2107. While Dr. De Boe presented various opinions, plaintiff does not explain how the ALJ failed to properly evaluate those opinions pursuant to 20 C.F.R. § 404.1520c. Accordingly, plaintiff's claim of error is denied.

**D. The ALJ committed reversible error by failing to properly support his residual functional capacity (RFC) finding in this case.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

In evaluating plaintiff's RFC, the ALJ provided an extensive review of plaintiff's medical history. The records included, among other things: counseling and psychotherapy with Abigal Guevara, Ph.D.; Botox injections for headaches; a 10-day admission at Forest View Hospital due to suicidal ideation in October 2017; a neuropsychological examination in May and June 2018 with Dr. De Boe; a physical RFC assessment by William Jackson, M.D. in January

2019; a mental RFC assessment by William Schirado, Ph.D. in January 2019; a long term disability application completed by Dr. Guevara in 2017 and 2018; a long term disability statement by plaintiff's primary care physician, Robert Lang, M.D. in January 2018; and, a long term disability statement by David Franzblau, M.D. in April 2018. PageID.62-69.

Plaintiff contends that the RFC: is contrary to virtually all of the evidence in this case; did not account for his constant post-fall headaches (which included treatment of at least one Botox injection); and is not valid because it does not allow for plaintiff's inevitable absences from work due to headaches. Plaintiff's Brief at PageID.2107. However, plaintiff's opposition to the ALJ's evaluation of the medical evidence provides little specificity beyond these contentions.

Plaintiff's argument boils down to a disagreement with the limitations set forth in the ALJ's RFC determination. The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted). This is precisely what the ALJ did in evaluating plaintiff's medical record, which consisted of over 1,700 pages.[2] After evaluating this record, the ALJ found that plaintiff had significant limitations: he can perform no more than light exertional work; he is limited to receiving, comprehending, and executing simple, routine tasks; he can have no contact with the public; he can have only occasional contact with coworkers and supervisors; and he can have only occasional changes in the work setting where the work is to be performed. PageID.61. Based on this record, the ALJ's RFC assessment is supported by substantial evidence. The fact that the record also contains evidence which would have supported a different conclusion does not

[2] The Court notes that plaintiff's medical history is set forth in 31 exhibits. *See* PageID.361-2078.

undermine the ALJ's decision. *Willbanks*, 847 F.2d at 303. Accordingly, plaintiff's claim of error is denied.

**E. The ALJ committed reversible error by using improper boilerplate language to justify his decision.**

Plaintiff's objection appears based in part on the ALJ's use of the following "boilerplate":

> After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision (PageID.67).

Plaintiff's Brief at PageID.2108. Plaintiff cites *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014) for the proposition that the implication in this "pernicious" boilerplate "is that the assessment of the claimant's ability to work preceded and may invalidate the claimant's testimony about his or her ability to work. Actually that testimony is properly an input into a determination of ability to work." *Id*. However, plaintiff has not developed an argument that this sentence creates a structural defect so significant that it requires the reversal of the ALJ's decision entered in this case. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is denied.

**F. The ALJ committed reversible error by failing to allow appropriate cross-examination of the vocational expert.**

Plaintiff contends that the ALJ erred because he refused to allow his attorney to question the vocational expert regarding the limitations imposed by Dr. De Boe. The transcript of the administrative hearing reflects this discussion as follows:

BY CLAIMANT'S ATTORNEY:

Q I took some testimony from the neuro psychologist [Dr. De Boe] who was treating my client.

ALJ: He doesn't get shown the F Section.

BY CLAIMANT'S ATTORNEY:
Q I'm referring to 31-F for the judge's information, he found that the claimant had an extreme problem understanding, remembering, and applying information with [sic] interacting with others, concentration, persistence and pace attributed to the brain injury sustained during a fall. If a person has those kinds of restrictions, are they capable of performing any job in the national economy?

ALJ: You're asking him about Part B criteria, to translate psychiatric limitations into vocational. I don't normally let VEs answer those questions.

ATTY: I'll object to you objecting to me, but I'll leave that on the record.

ALJ: Your objection is so-noted

PageID.99-100.

Plaintiff states that the "Social Security's own rule [HALLEX I-2-6-74(C)] gives an attorney the right to thoroughly question a vocational expert" and that "while the facts of the case are different, Richardson v. Perales, 402 U.S. 389 (1971), establishes the right to meaningful cross-examination in these cases." Plaintiff's Brief at PageID.2108-2109. Plaintiff provides no further discussion of these authorities or their application to this case. Defendant points out that the ALJ did not prevent plaintiff's attorney from cross examining the vocational expert. The ALJ allowed plaintiff's attorney to conduct a cross-examination (PageID.99), but did not allow counsel to ask the vocational expert to translate the paragraph B criteria in the mental impairment listings into vocational criteria. PageID.100. *See Lee v. Commissioner of Social Security*, 529 Fed. Appx. 706, 716 (6th Cir. 2013) (the vocational expert does not evaluate medical evidence). As the Sixth Circuit explained,

The RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy. *See* 20 C.F.R. § 404.1545(a) (listing factors that determine an RFC). The VE does

> not testify as to what the claimant is physically capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities. Thus, in a step-five analysis, the VE's testimony depends upon the RFC and not the other way around.

*Anderson v. Commissioner of Social Security*, 406 Fed. Appx. 32, 36 (6th Cir. 2010). For all of these reasons, plaintiff's claim of error is denied.

## IV. CONCLUSION

Accordingly, this matter will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: March 14, 2022

/s/ Ray Kent
United States Magistrate Judge